United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Andre Wilson, Petitioner, | ) |
| | ) |
| v. | ) Civil Action No. 22-22492-Civ-Scola |
| | ) |
| Carnival Corporation, Respondent. | ) |

### Order Granting Dismissal

This matter is before the Court upon Carnival Corporation's ("Carnival") motion to dismiss (**ECF No. 14**), which is **granted** for the reasons below.

**1. Background**

Petitioner Andre Denhario Wilson, a U.S. citizen, worked for Carnival aboard one of its ships. He suffered a work-related injury and brought claims against Carnival in arbitration. The arbitration was conducted under Panamanian law pursuant to the terms of the Petitioner's seafarer's agreement.

Notwithstanding language in the agreement that the Petitioner argues allowed him a three-year period to institute arbitral proceedings against Carnival, the arbitrator found the Petitioner's claims to be time-barred under Panamanian law, which provides for a one-year statute of limitations. Through this action, the Petitioner re-asserts his work-related claims against Carnival and asks this Court to vacate the arbitral award rendered against him.

Carnival, a Panamanian entity, moves to dismiss this action under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that the Petitioner's work-related claims are subject to arbitration and that neither federal nor international law grants the Petitioner the ability to affirmatively petition this Court to set aside the arbitral award.

**2. Legal Standard**

A court considering a motion to dismiss filed under Federal Rule of Civil Procedure 12(b)(6) must accept all of the complaint's allegations as true and construe them in the light most favorable to the plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Although a pleading need only contain a short and plain statement of the claim showing that the pleader is entitled to relief, a plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A court must dismiss a plaintiff's claims if the party fails to nudge its "claims across the line from conceivable to plausible." *Id.*

### 3. Discussion

The Court begins its analysis with the Petitioner's work-related claims. In his complaint, the Petitioner asserts the following counts: (1) equitable tolling of the limitations period to bring claims against Carnival (Count II), (2) negligence (Count III), (3) unseaworthiness (Count IV), (4) breach of the seafarer's agreement (Count V), and (5) equitable estoppel as to the limitations period (Count VI). (ECF No. 10.) After finding that these claims all are subject to arbitration, the Court turns to the Petitioner's vacatur claim (Count I).

**A. Work-Related Claims**

Carnival says the Petitioner's work-related claims are subject to arbitration. The Court agrees.

"In determining whether to compel arbitration, the Court considers three factors: (1) whether a valid written agreement to arbitrate exists, (2) whether an arbitrable issue exists, and (3) whether the right to arbitrate was waived." *Hilton v. Fluent, LLC*, 297 F. Supp. 3d 1337, 1341 (S.D. Fla. 2018) (Middlebrooks, J.). As to the first factor, it undisputed that the Petitioner's seafarer's agreement contains a mandatory arbitration clause that applies to "any and all disputes, arising out of or in connection with this Agreement or Seaferer's service on the vessel," except for wage disputes. (ECF No. 10 at 31.) The Petitioner raises no convincing argument to challenge the existence, validity, or bindingness of this agreement.

Second, it is readily apparent that all these claims fall within the scope of this clause such that they may not be heard by this Court. That is particularly evident in the case of the negligence and unseaworthiness claims, the substance of which the Petitioner *already* arbitrated. It makes no difference that the Petitioner asserts those two claims under the Jones Act. *Cvoro v. Carnival Corp.*, 941 F.3d 487, 495 (11th Cir. 2019) ("choice-of-law clauses may be enforced even if the substantive law applied in arbitration potentially provides reduced remedies (or fewer defenses) than those available under U.S. law.") (cleaned up) (quoting *Lindo v. NCL (Bahamas), Ltd.*, 652 F.3d 1257, 1265-69 (11th Cir. 2011)).

And last, the Petitioner cannot logically assert waiver because he already arbitrated under the agreement.

Accordingly, the Petitioner's work-related claims are subject to arbitration and must be dismissed.

### B. Vacatur Claim

Next, the parties agree that the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, governs the Petitioner's vacatur claim. The FAA is divided, in relevant part, into three chapters. Whereas Chapter 1 governs domestic arbitrations, Chapters 2 and 3 deal with foreign arbitral awards. *See* 9 U.S.C. §§ 201, 301. Chapter 2 transposes into federal law the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention"), June 10, 1958, 330 U.N.T.S. 3. Chapter 3 transposes into federal law the Inter-American Convention on International Commercial Arbitration (the "Panama Convention"), Jan. 30, 1975, 1438 U.N.T.S. 245.

Both treaties govern the process by which courts recognize and enforce foreign arbitral awards. However, the Panama Convention displaces the New York Convention whenever "a majority of the parties to the arbitration agreement are citizens of a State or States that have ratified or acceded to" it. *See* 9 U.S.C. § 305; *Técnicas Reunidas de Talara S.A.C. v. SSK Ingenieria y Construccion S.A.C.*, 40 F.4th 1339, 1344 (11th Cir. 2022). The Petitioner's complaint seeks vacatur under the New York Convention, (*see generally* ECF No. 10) but because the parties' home countries (i.e., the United States and Panama) have ratified the Panama Convention, the latter applies instead. 9 U.S.C. § 305(1).

In the interest of judicial economy, the Court will construe the Petitioner's claim and arguments to concern the Panama Convention given the two treaties' substantive overlap. *See Técnicas Reunidas*, 40 F.4th at 1344 ("And it is well-settled that where the New York and Panama Conventions are substantively the same, as they are in the context of the public-policy defense, decisions under the New York Convention apply with equal force to cases under the Panama Convention.").

So, to begin: Section 307 of the FAA incorporates a "residual clause" into Chapter 3's transposition of the Panama Convention. Section 307 says that the provisions of FAA Chapter 1 apply where they do not conflict with those of the Panama Convention. 9 U.S.C. § 307.

The Petitioner suggests his vacatur action is cognizable under Section 307 because Chapter 1 "plainly permits actions to vacate arbitral awards, while Chapters 2 and 3 are silent[.]" (Opp. 14, ECF No. 22.) Carnival, in turn, contends that Chapter 3 is *not* silent as to vacatur and thus the treaty's provisions must be followed instead. (*See* Reply 6, ECF No. 28.)

These positions are reduced into a question that seems to be of first impression in this Circuit: Does Section 307 of the FAA allow a party to affirmatively petition for vacatur under Chapter 1 where the subject of the petition is an arbitral award rendered abroad under foreign law?

The Court concludes that the answer, at least in this case, is "no." Although he invokes Chapter 1 of the FAA, the Petitioner purports to state his vacatur claim under Article 5 of the Panama Convention.[1] (*See* ECF No. 10 at 12-20.) Article 5 straightforwardly provides that a court may refuse to *recognize or enforce* an arbitral award only if the party against whom recognition or enforcement is sought can convince the Court that at least one of Article 5's bases for non-recognition/enforcement apply. *See* Panama Convention, art. 5. Thus, Article 5 is best understood to provide a list of *defenses* that a party may assert *only* in the context of an enforcement or recognition action against that party; unlike the provisions at 9 U.S.C. § 10, Article 5 is not properly interpreted to provide a list of bases upon which a party may affirmatively petition for vacatur. *See Técnicas Reunidas*, 40 F.4th at 1369 ("To be sure, the public-policy *defense* against enforcement of an arbitral award [found at Article 5] applies *only* in enforcement proceedings.") (emphasis added).

It follows, then, that because this is not a recognition or enforcement proceeding,[2] the Petitioner cannot properly invoke Article 5.

That ruling makes sense because defending against the enforcement or recognition of an award is necessarily distinct from seeking to vacate one. *Compare* RESTATEMENT (THIRD) U.S. LAW OF INT'L COMM. ARB. § 1.1(nn) (2019) [hereinafter RESTATEMENT] (defining "recognition" to mean a determination that "an international arbitral award is entitled to be treated as binding") *with id.* § 1.1(uu) (discussing "vacatur" as a legal action seeking the *annulment* of an award). In fact, vacatur is alluded to as a distinct notion at Article 5(1)(e) where the treaty establishes a defense against the enforcement or recognition of an award that "has been annulled or suspended by a competent authority of the State in which, or according to the law of which the decision has been made." Panama Convention, art. 5(1)(e).

Separately, this language brings up another reason to dismiss the Petitioner's vacatur claim. In cases where an arbitral award is rendered in and according to the laws of Country A but enforcement is sought in Country B, Country A is known as the "primary jurisdiction" and Country B is known as the "secondary jurisdiction." *E.g., Corporación AIC, SA v. Hidroelectrica Santa Rita S.A.*, 34 F.4th 1290, 1299–300 (11th Cir. 2022), *reh'g en banc granted, opinion vacated*, 50 F.4th 97 (11th Cir. 2022)[3]; 3 Ved P. Nanda et al., *Litig. of*

---

[1] As noted, the Petitioner argues under the New York Convention. However, the Court construes these arguments to be made under the Panama Convention.

[2] The Court is aware that it construed a similar motion to dismiss as a petition to confirm an award in *Técnicas Reunidas de Talara S.A.C. v. SSK Ingeneria y Construccion S.A.C.*, No. 21-22206-CIV, 2021 WL 5098219, at *1 (S.D. Fla. Oct. 12, 2021) (Altonaga, J.). However, Carnival has represented to the Court that it does not wish for the Court to construe its motion in such a manner. (Reply 5-6.)

[3] The Court acknowledges that the opinion in *Coproración AIC*, 50 F.4th 97, has been vacated and is non-binding. However, "[w]e are free to give statements in a vacated opinion persuasive

*Int'l Disputes in U.S. Courts* § 19:2 (2022). Because the treaty only contemplates vacatur by the "State in which, or according to the law of which the decision has been made," a secondary jurisdiction "may refuse to enforce—but *not annul*—[an] award." *See Corporación AIC*, 34 F.4th at 1300 (emphasis added); *Gulf Petro. Trading Co. v. Nigerian Nat'l Petro. Corp.*, 512 F.3d 742, 746 (5th Cir. 2008) ("in secondary jurisdictions parties can only contest whether that [country] should enforce the arbitral award.") (cleaned up).

  The result is that "a United States court sitting in secondary jurisdiction lacks subject matter jurisdiction over claims seeking to vacate, set aside, or modify a foreign arbitral award." *Gulf Petro. Trading Co.*, 512 F.3d at 746 (collecting cases). Thus, by the Panama Convention's very text at Article 5(1)(e), this Court is not in the proper position to vacate the award that the Petitioner complains of. *See Ingaseosas Intn'l Co. v. Aconcagua Invest. Ltd.*, No. 09-23078-CIV, 2011 WL 500042, at *3 (S.D. Fla. Feb. 10, 2011) (Huck, J.) ("In fact, the only courts with authority to vacate an arbitral award are courts at the seat of the arbitration.") (collecting cases); *see also Ingaseosas Int'l Co. v. Aconagua Invest. Ltd.*, 479 Fed. App'x 955, 961 (11th Cir. 2012) (distinguishing between primary and secondary jurisdictions and discussing vacatur in a primary jurisdiction vis-à-vis enforcement in a secondary jurisdiction); *Yusuf Ahmend Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 22 (2d Cir. 1997) ("Indeed, many commentators and foreign courts have concluded that an action to set aside an award can be brought *only* under the domestic law of the arbitral forum, and can never be made under the Convention.") (emphasis in original); RESTATEMENT § 4.2 cmt. a. ("Courts in the United States may deny recognition or enforcement of a foreign award if a basis for doing so is established under the applicable Convention . . . However, [U.S.] courts ordinarily lack power to *vacate* such an award.") (emphasis added).

  This conclusion is bolstered by a brief understanding of history. Before either the Panama or New York Conventions existed, the Convention on the Execution of Foreign Arbitral Awards, Sept. 26. 1927, 92 L.N.T.S. 301, "required an award first to be recognized in the rendering state before it could be enforced abroad." *Yusuf*, 136 F.3d at 22. Thus, a competent body in the primary jurisdiction would have to "sign off" on an arbitral award before it could be recognized in a secondary jurisdiction. This "double exequatur" was seen as a time-consuming hurdle. To allow for a more practical approach, the New York Convention eradicated "the requirement that a court in the rendering state recognize an award before it could be taken and enforced abroad." *Id.* The Panama Convention followed suit.

---

value if we think they deserve it." *Friends of Everglades v. S. Fla. Water Mgmt. Dist.*, 570 F.3d 1210, 1218 (11th Cir. 2009).

Despite the elimination of double exequatur, "[t]here is no indication in the [New York] Convention of any intention to deprive the rendering state of its supervisory authority over an arbitral award, including its authority to set aside that award under domestic law." *Id.* This explains why the Panama and New York Conventions only contemplate "annulment or suspension" by a rendering state. Indeed, "the power and authority of the local courts of the rendering state remain of paramount importance." *Id.*; *see also Corporación AIC,* 34 F.4th at 1303–04 (Jordan, J.) (concurring) ("Under the New York Convention, the framework remains binary and allocates different responsibilities and measures of control to different jurisdictions.") (citing *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 335 F.3d 357, 358 (5th Cir. 2003)).

Thus, the Court agrees with Carnival that the treaty is *not* silent as to whether this Court may vacate the award. Allowing a court of secondary jurisdiction to exercise the powers reserved to one of primary jurisdiction would run afoul of the distinction between the two, which is made evident by Article 5(1)(e). For that reason, the Court concludes that FAA Section 307 does not authorize it to vacate an award under Chapter 1 where that award was rendered abroad under foreign law.

This finding does not, as the Petitioner asserts, violate any constitutional right to access courts. "It is well-settled that agreements to arbitrate will be enforced notwithstanding the contractual relinquishment of the right of access to the courts." *DCR Const., Inc. v. Delta-T Corp.*, 8:09-CV-741-T-27AEP, 2009 WL 5173520, at *5 (M.D. Fla. Dec. 30, 2009) (citing *Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1372 (11th Cir. 2005) ("Thus, where a party enters into a valid agreement to arbitrate, the party is not entitled to a jury trial or to a judicial forum for covered disputes.")). The petitioner's vacatur claim is dismissed.

### 4. Conclusion

Because the Petitioner fails to state a claim upon which this Court may grant relief, the Court **grants** Carnival's motion (**ECF No. 14**) pursuant to Rule 12(b)(6). The Clerk is directed to **close** this case, which is dismissed **with prejudice**. Any pending motions are denied as moot.

**Done and ordered** in Miami, Florida, on November 28, 2022.

_____
Robert N. Scola, Jr.
United States District Judge